IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KENNON WILSON, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| v. ] | Case No.: 2:23-cv-643-ACA |
| ] | |
| **DEUTSCHE BANK NATIONAL** ] | |
| **TRUST COMPANY, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

Plaintiffs Kennon and Ginger Wilson ("the Wilsons") entered a settlement agreement with Defendants Deutsche Bank National Trust Company as Trustee for Indymax Indx Mortgage Loan Trust 2005-AR15, Mortgage Pass-Through Certificates Series 2005-AR15 ("Deutsche Bank"), Ocwen Financial Corporation, Inc., and PHH Mortgage Corporation (collectively, the "Deutsche Bank Defendants"), under which the Wilsons would be able to exercise their right to redemption to a home on which Deutsche Bank had foreclosed. But it turned out that the Deutsche Bank Defendants' agents, Defendants AltiSource Solutions Inc., AltiSource Online Auction, Inc., and REALHomeServices and Solutions, Inc. (collectively, "the AltiSource Defendants"), had already sold the home to another buyer.

The Wilsons filed this lawsuit against Defendants, asserting claims both on their own behalf and on behalf of their minor son. (*See* doc. 31 at 1, 5 ¶ 1). Specifically, the three plaintiffs assert: (1) breach of contract by the Deutsche Bank Defendants ("Count One"); (2) suppression and/or fraudulent nondisclosure by the Deutsche Bank Defendants ("Count Two"); (3) fraud/misrepresentation by the Deutsche Bank Defendants ("Count Three"); (4) negligence by the Deutsche Bank Defendants ("Count Four"); (5) negligence by the Altisource Defendants ("Count Five"); (6) wantonness by the Deutsche Bank Defendants ("Count Six") and the Altisource Defendants ("Count Seven"); (7) conversion by all Defendants ("Count Eight"); (8) tortious interference with contractual and/or economic relations by the Altisource Defendants ("Count Nine"); and (9) abuse of process by all Defendants ("Count Ten"). (Doc. 31 at 21–30).

Defendants move under Federal Rule of Civil Procedure 12(f) to strike the "Summary of Case" from the Wilsons' second amended complaint for failure to comply with Federal Rules of Civil Procedure 8(d) and 10(b). (Doc. 35 at 1–2; doc. 46 at 1–2). The "Summary of Case" is almost identical to the summary included in the first amended complaint, which the court struck. (Doc. 19; *see* doc. 5 at 2–5). Like the previous summary, this one fails to comply with the Rules. The court therefore **WILL GRANT** Defendants' motions to strike and **WILL STRIKE** the

"Summary of Case" from the second amended complaint without further discussion. (Doc. 31 at 2–5).

Defendants also move for judgment on the pleadings solely with respect to any claims brought on behalf of the Wilsons' minor son. (Doc. 82). The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion. The Wilsons concede that their son's abuse of process claim is due to be dismissed (doc. 91 at 10 n.1), so the court **WILL GRANT** Defendants' motion and **WILL ENTER JUDGMENT ON THE PLEADINGS** on Count Ten as asserted on behalf of the Wilsons' minor son without further discussion.[1] The court **WILL GRANT** Defendants' motion and **WILL ENTER JUDGMENT ON THE PLEADINGS** on Counts One through Three and Nine as asserted on behalf of the Wilsons' minor son. And the court **WILL DENY** Defendants' motion as to Counts Four through Eight.

I.   BACKGROUND

When deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 928 (11th Cir. 2023). With limited exceptions, the

---

[1] Though the Wilsons do not oppose dismissal of their own abuse of process claims (doc. 91 at 10 n.1), this court cannot dismiss a single claim, even on the plaintiffs' motion, under Federal Rule of Civil Procedure 41. *See Rosell v. VMSB, LLC*, 67 F4th 1141, 1144 (11th Cir. 2023). Accordingly, the court will address the rest of Count Ten in connection with Defendants' motions for summary judgment. (Docs. 79, 80).

3

court may not consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d). However, documents attached to a complaint are part of the pleadings. *See* Fed. R. Civ. P. 10(c); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). So the court will consider the attachments to the complaint to the extent they are relevant. (Docs. 31-1, 31-2, 31-3, 31-4). Further, the court may consider evidence outside the pleadings if the evidence is of undisputed authenticity and central to the claims. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Defendants submit several pieces of evidence in support of their motion. (Docs. 82-1, 82-2). But only the assignment of the right of redemption satisfies the requirements for consideration in connection with this motion. (*See* doc. 82-1 at 11–12). The court therefore will not consider the other evidence presented at this point.

In November 2020, a widow agreed to sell her home to the Wilsons. (Doc. 31 ¶¶ 11, 14, 20). When the Wilsons asked the mortgagee, Deutsche Bank, for a mortgage payoff amount, the Deutsche Bank Defendants claimed that Deutsche Bank needed to foreclose on the property because the mortgage was in the deceased husband's name. (*Id.* ¶¶ 21–22). However, they told the Wilsons "that they could finalize their purchase . . . once the existing mortgage was foreclosed." (*Id.* ¶ 22). Deutsche Bank bought the house at the foreclosure sale. (*Id.* ¶ 24). Around the same time, the Wilsons sold their home and moved into a one-bedroom apartment. (Doc. 31 ¶¶ 17).

Based on the representations of the Deutsche Bank Defendants, the Wilsons moved clothes, furniture, keepsakes, books, and other personal belongings into the home. (*Id.* ¶¶ 26). But the Deutsche Bank Defendants delayed finalizing the Wilsons' purchase, and they hired a contractor, the AltiSource Defendants, to inspect, market, and sell the property. (*Id.* ¶¶ 28–29, 51). AltiSource found the Wilsons' possessions in the house and threw them away. (*Id.* ¶¶ 29, 35).

By the summer of 2021, frustrated by the delay, the Wilsons obtained an assignment of the former owner's statutory right of redemption. (Doc. 31 ¶¶ 36–37; doc. 82-1 at 11–12). In March 2022, the Deutsche Bank Defendants told the Wilsons they would allow them to redeem the property after the Deutsche Bank Defendants determined the correct redemption price. (Doc. 31 ¶ 44). As a result, the Wilsons refrained from filing a *lis pendens* notice on the property. (*See id.* ¶ 73). In April 2022, the AltiSource Defendants contracted to sell the property to a third party. (*Id.* ¶ 55). The Deutsche Bank Defendants instructed the AltiSource Defendants not to sell the property, but they proceeded with the sale to the third party. (*Id.* ¶¶ 59, 62).

The next month, Deutsche Bank, PHH Mortgage, and the Wilsons executed a settlement agreement confirming that the Wilsons would exercise their right to redeem, and the state court entered final judgment declaring that the Wilsons were entitled the redeem the property. (*Id.* ¶¶ 48–50; doc. 31-2; doc. 31-3 at 3). But when the Wilsons attempted to pay the redemption price in June 2022, the Deutsche Bank

Defendants told them the home had already been sold. (Doc. 31 ¶ 63). Because those defendants had not informed the Wilsons of their ongoing efforts to sell the property, the Wilsons remained in a one-bedroom apartment for over eighteen months. (Doc. 31 ¶¶ 73, 75). The Deutsche Bank Defendants refused to repurchase the property from the third party. (*Id.* ¶ 67).

## II.   DISCUSSION

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under [Federal] Rule [of Civil Procedure] 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Thus, the Wilsons' claims will survive Defendants' motion for judgment on the pleadings if the complaint "alleges facts sufficient to establish that the claim is plausible on its face." *Id.* (quotation marks omitted).

This motion relates only to the claims the Wilsons brought on behalf of their minor son. (*See* doc. 82). The court will first consider Defendants' arguments for judgment on the pleadings as to the Wilsons' son's breach of contract and tortious interference claims (Counts One and Nine), followed by his negligence and wantonness claims (Counts Four through Seven), suppression and fraud claims (Counts Two and Three), and finally, the conversion claim (Count Eight).

### 1. Breach of Contract and Tortious Interference (Counts One and Nine)

In Count One, the Wilsons allege that the Deutsche Bank Defendants breached the settlement agreement by refusing to allow the Wilsons to exercise their statutory right of redemption. (Doc. 31 ¶¶ 80, 82). In Count Nine, the Wilsons allege that the AltiSource Defendants tortiously interfered with the Wilsons' statutory right to redeem the property "by marketing and selling the [p]roperty . . . while [the Wilsons] attempted to exercise their rights of redemption pursuant to their discussions and [settlement] agreement" and "by refusing [the Wilsons] the opportunity to re-purchase the [p]roperty." (Doc. 31 ¶¶ 114, 117–18).

Defendants argue that they are entitled to judgment on the pleadings because the Wilsons' son was not a party to the settlement agreement or the assignment of the right of redemption, nor did he have any business relationships with which Defendants could have possibly interfered. (Doc. 82 at 9–10). The Wilsons' response does not address their son's breach of contract and tortious interference claims. (*See generally* doc. 91).

A breach of contract claim requires, among other things, "the existence of a valid contract binding the parties in the action." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). A third-party beneficiary may maintain an action to recover for breach of contract, but he "must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third

party; 2) that [he] was the intended beneficiary of the contract; and 3) that the contract was breached." *Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1250 (Ala. 2005) (quotation marks omitted). A claim of tortious interference with a business relationship requires, among other things, "(1) the existence of a protectable business relationship; (2) of which the defendant knew." *Ex parte BTC Wholesale Distrib., Inc.*, 400 So. 3d 561, 569 (Ala. 2023). And a claim of tortious interference with a contractual relationship requires "the existence of an enforceable contract." *White Sands Grp., LLC v. PRS II, LLC*, 998 So. 2d 1042, 1054 (Ala. 2008).

The Wilsons' son was neither a party to the settlement agreement nor an assignee of the right of redemption. (*See* doc. 31-2 at 8; doc. 82-1 at 11–12). And the Wilsons' complaint does not allege that their minor son had any business interests or relationships with which Defendants interfered. (*See generally* doc. 31). Moreover, the Wilsons do not allege that their son was an intended beneficiary of either the settlement agreement or the assignment of the right of redemption, nor do they allege that they, along with the other parties to those contracts, intended to bestow a direct benefit upon their son at the time the contracts were executed. (*See generally* doc. 91). Thus, the Wilsons fail to plausibly allege that Defendants breached the settlement agreement or tortiously interfered with the minor son's contractual or economic relationships.

The court **WILL GRANT** Defendants' motion for judgment on the pleadings and **WILL ENTER JUDGMENT ON THE PLEADINGS** in favor of Defendants and against the minor son with respect to Counts One and Nine.

        2.        Negligence and Wantonness (Counts Four Through Seven)

In Counts Four and Five, the Wilsons allege that Defendants breached their duty to allow the Wilsons to redeem the property. (Doc. 31 ¶¶ 100–01, 103–04). In Counts Six and Seven, the Wilsons allege that Defendants acted willfully and wantonly when they continued to market and sell the property despite their knowledge that the property was subject to redemption litigation and the Wilsons' right to redeem, and when they refused to repurchase the property to allow the Wilsons to redeem. (*Id.* ¶¶ 106–07, 109–10).

Negligence and wantonness claims require first that the defendant owed a duty to the plaintiff, which is a "strictly legal question" that the court must decide. *Taylor v. Smith*, 892 So. 2d 887, 891 (Ala. 2004). Among other factors, "[t]he key factor [in determining whether the defendant owed a duty] is whether the injury was foreseeable by the defendant." *Id.* at 892. (quotation marks and emphasis omitted). "The essential question [with respect to foreseeability] is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Patrick v. Union State Bank*, 681 So. 2d 1364, 1368–69 (Ala. 1996). In addition to foreseeability, "[t]he existence of a duty is determined by . . . (1) the nature of the

9

defendant[s'] activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Taylor*, 892 So. 2d at 892 (quotation marks omitted).

Defendants argue that because the Wilsons' minor son was not an assignee of the right of redemption, a party to the settlement agreement, or a party to the final judgment entered by the state court, they owed him no duty. (Doc. 82 at 10–12). The Wilsons respond that duties may be extended to foreseeable third parties even in the absence of a legal relationship. The court agrees on that point. The Wilsons further contend that "[i]t [wa]s reasonably foreseeable that the Wilsons' minor child, who resides with them, would be injured by Defendants' decision to deny that home to the Wilsons." (Doc. 91 at 8).

In their reply brief, Defendants do not respond to the Wilsons' argument that the injury to the minor son was foreseeable. Defendants instead argue that an intimate nexus between the parties is a condition of imposing tort liability where the failure to exercise due care creates only a risk of economic loss. (Doc. 97 at 5). But Defendants have not established that the Wilsons cannot recover for personal injuries caused by Defendants alleged negligence. In the absence of any limitation on damages, the question of whether Defendants owed a duty to the Wilsons' son depends on foreseeability. Because Defendants did not address whether the minor son's injury was foreseeable, they are not entitled to judgment on the pleadings.

Accordingly, the court **WILL DENY** Defendants' motion for judgment on the pleadings with respect to Counts Four through Seven.

### 3. Suppression and Fraud (Counts Two and Three)

In Count Two, the Wilsons allege that the Deutsche Bank Defendants "wantonly, recklessly, negligently, or innocently" suppressed that "they were attempting to sell the [p]roperty to third parties before [the Wilsons] could exercise their statutory right of redemption." (Doc. 31 ¶¶ 88, 90). In Count Three, the Wilsons allege that the Deutsche Bank Defendants made two misrepresentations to the Wilsons. First, beginning in November 2020, those defendants "repeatedly represented to [the Wilsons] that they would allow [the Wilsons] to purchase the [p]roperty." (*Id.* ¶ 92). Second, in the spring of 2022, those defendants "repeatedly represented to [the Wilsons] that they would voluntarily allow [the Wilsons] to redeem their [p]roperty pursuant to their statutory rights" once the redemption price was ascertained. (*Id.* ¶ 95). As a result of these omissions and misrepresentations, the Wilsons did not seek to block the sale judicially or file a *lis pendens* notice, and they sold their home and moved into a one-bedroom apartment. (*Id.* ¶¶ 91, 99).

Suppression and misrepresentation claims require, among other things, the plaintiff to establish that "[the defendant's] suppression induced [the plaintiff] to act or refrain from acting." *Sandoz, Inc. v. State*, 100 So. 3d 514, 527 (Ala. 2012) (quotation marks omitted). Defendants argue that they are entitled to judgment on

11

the pleadings on these claims because the Wilsons' son, as a minor and non-party to the sales agreement or the assignment of the right of redemption, could not have relied on their representations. (Doc. 82 at 12–13; *see also* doc. 97 at 8–9). The Wilsons contend generally that a third party may recover for fraud even if he was not the direct recipient of the false representation. (Doc. 91 at 8–9).

The Wilsons are correct that misrepresentation claims do not always require that a misrepresentation was made directly to the person who claims to have been injured. *See Thomas v. Halstead*, 605 So. 2d 1181, 1184 (Ala. 1992). But Defendants do not argue that their omissions or representations never made their way to the Wilsons' son; they argue that the son could not have relied on them. (*See* doc. 97 at 9). The Wilsons do not, and could not, plausibly allege that their minor son decided to sell their home, move the family into an apartment, refrain from filing a *lis pendens* notice, or refrain from seeking an injunction or other court order. (*See* doc. 31 ¶¶ 91, 99); *Sandoz*, 100 So. 3d at 533 ("Reliance requires that the misrepresentation actually induced the injured party to change its course of action.") (quotation marks omitted; alteration accepted); *Carbone*, 910 F.3d at 1350. The Wilsons' minor son was subject to his parents' decisions; he therefore made no decisions in reliance on Defendants' misrepresentations.

Accordingly, the Wilsons' suppression and misrepresentation claims asserted on behalf of their minor son fail as a matter of law. The court **WILL GRANT**

12

Defendants' motion for judgment on the pleadings and **WILL ENTER JUDGMENT ON THE PLEADINGS** in favor of Defendants and against the minor son with respect to Counts Two and Three.

### 4.  Conversion (Count Eight)

In Count Eight, the Wilsons allege that the AltiSource Defendants "converted and wrongfully destroyed [the Wilsons'] personal[] property and possessions without notice or consent" at the instruction of the Deutsche Bank Defendants. (Doc. 31 ¶ 112). "To establish conversion, a plaintiff must show a wrongful taking, . . . or a wrongful detention or interference with another's property." *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994).

Defendants make no specific arguments about the conversion claim (*see generally* doc. 82), but argue generally that the Wilsons' complaint fails to include any substantive allegations on behalf of their minor son (*id.* at 8). The Wilsons contend that this argument should have been asserted through a motion for a more definite statement, not a motion for judgment on the pleadings. (Doc. 91 at 5–6).

Federal Rule of Civil Procedure 12(e) states that "[a] party may move for a more definite statement" if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Inability to prepare a response is not Defendants' concern. (*See* doc. 82 at 8). Rather, Defendants argue that "[n]o alleged facts regarding the [s]on support the causes of action of the

13

[c]omplaint." (*Id.*). Thus, a motion for judgment on the pleadings is the appropriate vehicle for Defendants' argument.

Nonetheless, the court disagrees that the Wilsons fail to make substantive allegations on behalf of their son with respect to their conversion claim. The Wilsons allege that Kennon and Ginger Wilson and their minor son are "[t]he three plaintiffs" in the suit. (Doc. 31 ¶ 1). And they allege that after the Wilsons moved their "possessions, including clothes, furniture, and various keepsakes into the home," AltiSource's "representatives found *Plaintiffs'* personal possessions," such as "clothes, books, furniture, keepsakes, and other items," and put them in the trash. (*Id.* ¶¶ 26, 29, 35) (emphasis added). It is plausible that some of these possessions were the personal property of the Wilsons' minor son. *See Carbone*, 910 F.3d at 1350. Accordingly, the court **WILL DENY** Defendants' motion for judgment on the pleadings with respect to Count Eight.

### III.  CONCLUSION

The court **WILL GRANT** Defendants' motions to strike and **WILL STRIKE** the "Summary of Case" in the Wilsons' second amended complaint. (Doc. 31 at 2–5; *see* doc. 35 at 1–2; doc. 46 at 1–2). The court **WILL GRANT** Defendants' motion for judgment on the pleadings and **WILL ENTER JUDGMENT ON THE PLEADINGS** in favor of Defendants and against the Wilsons' minor son with

respect to Counts One through Three, Nine, and Ten. (Doc. 82). The court **WILL DENY** Defendants' motion as to Counts Four through Eight.

The court will enter a separate partial judgment and order consistent with this opinion.

**DONE** and **ORDERED** this September 30, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE